RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0399P (6th Cir.)
File Name: 01a0399p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL SKRJANC,
          *Plaintiff-Appellant,*

          *v.*

No. 00-3726

GREAT LAKES POWER
SERVICE COMPANY,
          *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-02954—Kathleen McDonald O'Malley,
District Judge.

Argued: September 12, 2001

Decided and Filed: November 14, 2001

Before: DAUGHTREY and GILMAN, Circuit Judges;
COHN, Senior District Judge.*

_____

*The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Richard C. Haber, REMINGER & REMINGER, Cleveland, Ohio, for Appellant.    Patrick J. Perotti, DWORKEN & BERNSTEIN, Painesville, Ohio, for Appellee. **ON BRIEF:** Richard C. Haber, REMINGER & REMINGER, Cleveland, Ohio, for Appellant.    Patrick J. Perotti, DWORKEN & BERNSTEIN, Painesville, Ohio, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.  Michael Skrjanc brought this suit against his former employer, Great Lakes Power Service Company (Great Lakes Service), alleging that his employment was terminated in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, and Ohio public policy.  Following the district court's grant of summary judgment in favor of Great Lakes Service, Skrjanc filed this appeal.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

In February of 1996, Great Lakes Service hired Michael Skrjanc to do repair work.  Great Lakes Service, as the service arm of Great Lakes Power Transmission Company (Great Lakes), does maintenance work on products relating to the marine power transmission industry.  At the time Skrjanc was hired, Great Lakes was a franchisee and distributor of the Ingersoll-Dresser pump line (IDP), which it sold through Great Lakes Products Company (Great Lakes Products).  Great Lakes both serviced and sold Ingersoll-Dresser pumps.

The great majority of Skrjanc's work for Great Lakes Service involved the repairing of pumps, but he also did mechanical repairs on electric motors.

Skrjanc injured his foot while at work in June of 1996. This injury caused him to take a leave of absence for nearly twelve weeks. Great Lakes Service took no adverse action against Skrjanc as a result of this leave of absence, and he returned to work on September 3, 1996. In February of 1997, Skrjanc was promoted to the position of "acting pump service manager." He was given the title of "lead pump service technician" in May of 1997. In his performance reviews, Great Lakes Service rated Skrjanc in the good to excellent range.

Skrjanc's foot problems continued and, in May of 1998, a doctor recommended that he undergo surgery that would require him to miss approximately three months of work. On May 13, 1998, Skrjanc informed his supervisor, Todd Lindemer, that he needed foot surgery and a leave of absence to recover. Lindemer told Skrjanc to speak with David Bell, the Executive Vice President of Great Lakes Products. Skrjanc informed Bell that he would be undergoing the surgery, but offered to schedule it for the fall when the pump department was less busy.

Three months before Skrjanc informed Bell of his need for further foot surgery, Great Lakes began to consider divesting itself of the IDP franchise and distributorship. The minutes of its board of directors meeting on February 9, 1998 reflect that the board was having a "continued problem getting four business units up to speed" (Electric, Pump, Air, and Manufacturing), and was considering divesting itself of one of these units. Great Lakes wrote two letters to IDP, one in March and another in May of 1998, expressing concern about IDP's decision to employ a fourth distributorship in the Cleveland area, thereby increasing competition with Great Lakes. The minutes from Great Lakes's May 1998 board meeting show that a Great Lakes representative described a

meeting with IDP and advised Great Lakes to "order nothing for stock." At this meeting, the board also discussed the status of the pump unit.

Lindemer informed Skrjanc on June 19, 1998 that he was being discharged. At approximately the same time, Great Lakes finalized the divestment of the IDP franchise and discharged all four of the people who worked in the pump unit. Skrjanc was the only employee who was then working in the service end of the pump unit (Great Lakes Service); the other three employees worked in pump sales (Great Lakes Products). Although Great Lakes continued to service pumps after the termination of the IDP franchise, revenue from servicing pumps dropped from over $100,000 per year to less than $7,000 per year.

Skrjanc spoke with Harry Allen, the president of Great Lakes Products, on June 22, 1998, a few days after he had been told that he was being discharged. Allen refused to discuss the restructuring of the pump unit with Skrjanc, telling him that the plans were "confidential" and that he was not even sure if the restructuring would occur. Allen told Skrjanc that he would be able to discuss the issue more fully in two weeks.

Skrjanc, who had seen a classified ad in the local newspaper in which Great Lakes Service sought a new electric motor mechanic, and had seen a company memo stating that Great Lakes was interviewing a potential new employee, asked if he might be considered for the electric motor mechanic position. Allen told Skrjanc that he did not have the necessary experience for that job. Skrjanc, however, alleges that he was trained as an electric motor mechanic and that this was the job he was originally hired to do. He also asked for a job in the machine department. But Allen told Skrjanc that he was "too talented" for the job and should seek employment with one of Great Lakes's competitors.

**F.    The trial court correctly dismissed Skrjanc's Ohio public policy claim**

Any alleged violation of an Ohio public policy that is derived from the FMLA is obviously dependent on there in fact being a violation of the FMLA itself. Because the district court correctly concluded that Skrjanc failed to show that Great Lakes Service violated the FMLA when it discharged him, Great Lakes Service could not have violated an Ohio policy based upon the FMLA.

### III.  CONCLUSION

For all of the reasons set for above, we **AFFIRM** the judgment of the district court.

Skrjanc urges. *Ercegovich*, 154 F.3d at 354. If Skrjanc could show that Great Lakes normally gives employees an opportunity to be considered for new jobs within the company when their positions are eliminated, or that another employee who had not invoked FMLA rights was considered for transfer, then Skrjanc could raise a reasonable inference that he was treated dissimilarly because he had invoked his rights under the FMLA.

Skrjanc, however, was unable to make such a showing. All four Great Lakes employees who were primarily involved in the pump business were discharged. Skrjanc has produced no evidence that any of the other three employees was considered for a new position within the parent company's structure, or that Great Lakes has a history of considering employees for transfer when their positions are eliminated. Without such evidence, Skrjanc has no right under the FMLA to be considered for a transfer.

This leaves Skrjanc with nothing more than the proximity in time between the date he informed Great Lakes Service of his intention to take a leave of absence and his discharge one month later. But such temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual. *See Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-98 (10th Cir. 1997) (noting that temporal proximity alone does not constitute a pretext for retaliatory discharge under the Fair Labor Standards Act); *White v. Simpson Indus., Inc.*, No. 99-4182, 2001 WL 45240, at *3 (6th Cir. Jan. 12, 2001) (unpublished table decision) (concluding that the temporal proximity between the plaintiff's workers' compensation claim and his discharge is not sufficient to rebut the employer's legitimate reason for discharge). We therefore conclude that Skrjanc has not met his burden of raising a genuine issue of material fact as to whether Great Lakes Service's reason for discharging him was pretextual.

Approximately six weeks after Skrjanc was laid off, Great Lakes hired David Feeney as an electric motor mechanic. As a new employee, Feeney was not eligible for a leave of absence until he had been employed for 12 months.

Great Lakes Service also ran advertisements in the classified section of the newspaper in March of 1998 for a pump mechanic, before Skrjanc was laid off and before the decision to restructure the pump unit was made. No one was ever hired for this position. The supervisor who placed the ad, Lindemer, was not privy to the board-level decision process regarding the divestment of the IDP franchise.

Skrjanc underwent surgery on his foot in October of 1998. He started working for DAI Ceramics in March of 1999 as a maintenance supervisor, where he makes slightly more per hour than he did when he left Great Lakes Service.

**B.   Procedural background**

On November 23, 1998, Skrjanc filed suit against Great Lakes Service in the Court of Common Pleas for Lake County, Ohio, alleging unlawful discrimination pursuant to the FMLA, 29 U.S.C. §§ 2601-2654, and Ohio public policy. The case was removed to the Northern District of Ohio on the basis of the federal question involved. On May 3, 2000, the district court granted summary judgment in favor of Great Lakes Service, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, on both the FMLA and Ohio public policy claims.

Regarding the FMLA claim, the district court followed the *McDonnell Douglas* burden-shifting framework for employment discrimination cases based on indirect evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court concluded that (1) Skrjanc had presented a prima facie case of discrimination, (2) Great Lakes Service had articulated a nondiscriminatory reason for Skrjanc's dismissal; namely, that it was part of a restructuring of the company's pump business, and (3) Skrjanc failed to produce

evidence that Great Lakes Service's nondiscriminatory rationale for discharging him was in reality a pretext designed to mask discrimination. The district court also concluded that if Great Lakes did not violate the FMLA, it could not have violated any Ohio public policy based on the FMLA. This appeal followed.

## II.  ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.  The district court correctly concluded that Skrjanc presented a prima facie case of retaliatory discharge

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if he or she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Skrjanc's foot injury was such a "serious health condition." The district court properly concluded that Skrjanc presented a prima facie case of retaliatory discharge by showing that (1) he availed himself of a protected right under the FMLA by notifying Great Lakes Service of his intent to take leave, (2) he was

essentially the same as his own, but which had been cosmetically renamed, this might well have constituted a showing of pretext sufficient to reach the jury.

The evidence that Skrjanc musters, however, does not constitute such a showing. Skrjanc claims that he was originally hired to do mechanical repairs on electric motors, and he notes that he did such repairs frequently throughout his tenure. Although these facts might indicate his qualifications for the new position, they do not show that the new position was in reality the same as the old one. At the time his position was eliminated, Skrjanc's job title was "lead pump service technician." He spent a small portion of his time doing mechanical repairs on electric motors, and the great majority of his time servicing pumps.

The job Feeney filled is devoted to electric motors. Although the record does not disclose whether Feeney ever did any work on pumps, the company's current billings for pump work show that he could be doing no more than seven percent of the yearly work on pumps that Skrjanc had done. In addition, Feeney does electrical repairs on electric motors, whereas Skrjanc did only mechanical repairs. Skrjanc also notes that Feeney reports to Skrjanc's old supervisor, Lindemer, but this is unremarkable in a small company. These facts do not create a genuine issue of material fact as to whether Skrjanc was replaced by another person to do the same job.

Regardless of the fact that the FMLA does not grant Skrjanc an independent right to be considered for a transfer, the FMLA does protect Skrjanc's right to be treated the same as other similarly situated employees. *Vargas v. Globetrotters Eng'g Corp.*, 4 F. Supp. 2d 780 (N.D. Ill. 1998) (holding that a field secretary had a viable FMLA claim where she contended that a similarly situated and similarly skilled field secretary was given a job by the company at about the same time that her position was eliminated). It is for this proposition that *Ercegovich* stands, not the proposition that

was not eligible for a leave of absence for 12 months after he was employed. Great Lakes Service's failure to consider Skrjanc for this position, Skrjanc argues, shows that it wanted to get rid of him because it preferred to employ someone who would not soon be taking a twelve week leave of absence.

The FMLA, however, does not give Skrjanc the right to be considered for transfer if he did not have such a right before he requested leave. *See* 29 U.S.C. § 2614(a)(3)(B) (providing that the FMLA does not give an employee who invokes the protection of the statute any greater rights to employment than the employee would otherwise have had); *Hubbard v. Blue Cross Blue Shield Ass'n*, 1 F. Supp. 2d 867, 875 (N.D. Ill. 1998) ("[T]he FMLA and its implementing regulations make clear that an employee has no greater right of reinstatement than if [he] would have been continuously employed during the leave period.").

Skrjanc cites *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998), for the proposition that there are circumstances when a transfer might be required. His reliance on *Ercegovich,* however, is misplaced. In *Ercegovich*, the court held that the plaintiff in that case had established a genuine issue of material fact on the issue of pretext pursuant to the Age Discrimination in Employment Act because the employer allegedly did not afford the plaintiff the same opportunity to transfer to available positions within the company that it offered to younger employers similarly affected by the reorganization. *Id.* at 357. But the right to be treated similarly to other employees, as recognized in *Ercegovich*, is totally different from a freestanding right to be considered for transfer.

Skrjanc attempts to avoid the rule that the FMLA does not provide a freestanding right to transfer by characterizing the electric motor service position as not a new position at all, but the same job that Skrjanc had been performing all along. Indeed, if Skrjanc could support the allegation that Great Lakes Service hired a new person for a job that was

adversely affected by an employment decision when he was discharged, and (3) the proximity in time between Skrjanc's request for leave and his discharge constitutes indirect evidence of a causal connection between his exercise of a right under the FMLA and the adverse employment decision. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (listing the elements of a prima facie case for a retaliatory discharge claim).

Great Lakes Service contests the district court's conclusion that Skrjanc presented a prima facie case, arguing that Skrjanc did not have a protected right under the FMLA. The FMLA protects an employee for up to twelve weeks of leave. Skrjanc is not protected by the FMLA, argues Great Lakes Service, because he remained out of work for nine months following his discharge. We disagree.

First, the case that Great Lakes Service primarily relies on does not support its proposition. In *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998), the plaintiff was discharged *after* his twelve weeks of leave had passed and he was still unable to work. Skrjanc, in contrast, alleges that he was discharged in retaliation for *intending* to take his statutorily protected twelve weeks of leave. The right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future. *See* 29 U.S.C. § 2612(e) (requiring an employee to give his employer notice of "foreseeable leave" in order to come under the protection of the statute). The question of whether Skrjanc in fact took more than twelve weeks to recover is not relevant to the particular right he asserts in this case; that is, the right to request twelve weeks of leave pursuant to the FMLA without being fired in retaliation.

Second, the five-month gap between Skrjanc's surgery on October 14, 1998 and his new job with another company in March of 1999 does not necessarily refute Skrjanc's assertion that he was physically able to return to work at the end of

twelve weeks, long before he was able to find a new job. Finding a new job might well have taken him more time than it took him to recover. Even if this time gap were at issue in this case, the question of whether Skrjanc could have returned to his old job at Great Lakes Service at the end of twelve weeks would be a disputed issue of fact for the jury to decide. A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001). Accordingly, we conclude that the district court did not err in finding that Skrjanc established a prima facie case under the FMLA.

## C. The *McDonnell Douglas* framework

As proof of retaliation, Skrjanc relies on the proximity in time between his request for leave and his discharge. This is a form of indirect evidence. In an FMLA case relying upon indirect evidence, we will apply the three-step process delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze Skrjanc's claim that he was fired in violation of the FMLA for taking a medical leave of absence. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998) (applying *McDonnell Douglas* to analyze the plaintiff's claim that he was fired in violation of the FMLA for taking sick leave).

Under *McDonnell Douglas*, Skrjanc must first prove a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. The burden then shifts to Great Lakes Service to articulate a legitimate, nondiscriminatory reason for Skrjanc's discharge. *Id.* at 802-04. If Great Lakes Service articulates such a reason, then Skrjanc has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Id.* at 804-06. Skrjanc argues that the district court erred in concluding that (1) Great Lakes Service offered a legitimate, nondiscriminatory rationale for discharging him, and (2) Skrjanc failed to produce evidence that the alleged nondiscriminatory rationale was in reality a pretext designed to mask discrimination. For the reasons set

forth in Parts II.D. and II.E. below, we find no merit in these two assignments of error.

## D. The district court did not err in concluding that Great Lakes Service offered a legitimate, nondiscriminatory rationale for discharging Skrjanc

Great Lakes Service explained that it discharged Skrjanc because it ceased operating as an IDP franchisee. This nondiscriminatory rationale is well supported by the facts set forth in Part I.A. above. In addition, Skrjanc had taken a nearly twelve week leave of absence to recover from foot surgery in 1997, a year before he was discharged, and he returned to work afterward without incident. Great Lakes Service's willingness to cooperate with Skrjanc's absence in 1997 gives its proffered nondiscriminatory reason for discharging Skrjanc in 1998 added credibility. The only remaining question, therefore, is whether Skrjanc produced sufficient evidence to allow a jury to decide that, despite the plausibility of Great Lakes Service's nondiscriminatory rationale, the real reason that it discharged him was that he intended to take twelve weeks of leave later in the year.

## E. The district court did not err in concluding that Skrjanc failed to produce sufficient evidence of pretext

Skrjanc does not offer any direct evidence that Great Lakes Service discharged him because of his intention to take leave, but such evidence is not necessary under the Supreme Court's recent decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). Instead, Skrjanc can meet his burden of showing pretext by producing evidence tending to show that Great Lakes Service's proffered reason for his discharge was false. *Id.* at 147. To this end, Skrjanc emphasizes the fact that six weeks after he was fired, Great Lakes Service hired a new employee to service electric motors without giving Skrjanc an opportunity to be considered for the job. The man that Great Lakes Service hired for the position, David Feeney,