RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0233P (6th Cir.)
File Name: 03a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

KIN GIBSON,
    *Plaintiff-Appellant,*

    *v.*
             No. 02-5473

CITY OF LOUISVILLE,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00324—John G. Heyburn II, Chief District Judge.

Argued: April 14, 2003

Decided and Filed: July 17, 2003

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

———————

### COUNSEL

**ARGUED:** Timothy R. McCarthy, NUTT & MAYER, Louisville, Kentucky, for Appellant. Angela T. Dunham, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** Timothy R. McCarthy, NUTT & MAYER, Louisville, Kentucky, for

Appellant. Angela T. Dunham, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

———————

### OPINION

———————

RONALD LEE GILMAN, Circuit Judge. Kin Gibson was terminated from his job with the City of Louisville in 1998. Gibson sued the City, arguing that he was fired in retaliation for requesting leave under the Family and Medical Leave Act (FMLA). The jury returned a verdict in favor of the City. Gibson now appeals, contending that the district court's instruction to the jury contained an inaccurate statement of the law. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

Gibson claimed that he was terminated in retaliation for requesting family medical leave to undergo back surgery, in violation of the FMLA, 29 U.S.C. §§ 2601-2654. The City disagreed, contending instead that his termination resulted from insubordination, leaving his workstation without permission, and being absent from work without authorization for three days. Over Gibson's objection, the district court instructed the jury that "[y]ou must answer the following question: do you find from the evidence that the City of Louisville terminated Kin Gibson from his job because he requested FMLA leave?" The jury found in favor of the City. On appeal, Gibson argues that the above instruction was an inaccurate statement of the relevant law. He thus requests that the judgment entered by the district court on the jury verdict be reversed and that a new trial be granted.

## II. ANALYSIS

### A. Standard of review

This court reviews jury instructions to determine whether they are a correct interpretation of the relevant law. *Rogers v. T.J. Samson Cmty. Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002). We look at them "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 263 (6th Cir. 2000). Because the correctness of jury instructions is a question of law, they are reviewed de novo. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998).

### B. The jury instructions, taken as a whole, adequately interpreted the relevant law

Gibson urges us to set aside the judgment against him because the jury instructions allegedly contained an inaccurate statement of the law. Specifically, he contends that the "because" language quoted above misled the jury into believing that retaliation for the exercise of his rights under the FMLA had to be the sole reason for his termination. Gibson argues that something more akin to a "mixed-motive analysis" must be used in the jury instructions, so that the retaliation need only be *a* factor (not *the* factor) in the termination decision. The mixed-motive analysis permits a finding of liability where the employer is motivated by both unlawful considerations and legitimate reasons. *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003) (holding that direct evidence is not required in order to prove discrimination in mixed-motive cases under Title VII); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240-41 (1989) (plurality opinion) (applying the mixed-motive analysis in a gender discrimination case based on a failure to promote).

In making this argument, Gibson primarily relies on the Seventh Circuit case of *King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir. 1999) (reversing the district court's grant of summary judgment for the employer because the employee had made out a prima facie case of FMLA retaliation and had raised a genuine issue of material fact regarding the employer's proffered nondiscriminatory reason for terminating her). The court in *King* used language found in the Code of Federal Regulations to state that "an employer may not consider the taking of FMLA leave as a negative factor in employment actions." *Id.* at 891; *see* 29 C.F.R. § 825.220(c). Gibson uses the negative-factor language to argue that he does not have to prove that retaliation was the "sole reason" for his termination, but only that it was a motivating or substantial factor in that decision.

He is correct in so far as he argues that he did not need to prove that discrimination was the sole reason for his termination. But to say that the City fired Gibson "because he requested FMLA leave" does not answer the question of whether the action was taken "solely because of" or only "in part because of" his request. In order to answer this question, we must analyze the jury instructions as a whole to determine whether they adequately directed the jury to focus on the ultimate issue in this case—whether Gibson's termination was motivated by his FMLA request.

In *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309 (6th Cir. 2001), this court held that the *McDonnell Douglas* burden-shifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. *Id.* at 315. Whether Gibson's case consisted of direct or indirect evidence or some combination of the two is, for the reasons discussed below, ultimately irrelevant. The district court, however, used the *McDonnell Douglas* framework in instructing the jury. Under *McDonnell Douglas*, a plaintiff relying upon indirect evidence of unlawful discrimination must first establish a prima facie case. The employer then has the burden of articulating a

legitimate nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action. *Id.*; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153-54 (2000) (holding, in an age-discrimination action, that the establishment of a prima facie case and sufficient evidence of pretext may permit the trier of fact to find unlawful discrimination).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. Once Gibson had established his prima facie case and the City had come forth with its legitimate nondiscriminatory reasons, the *McDonnell Douglas* burden-shifting framework fell away and the trier of fact was left to determine the ultimate question of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-511 (1993) ("If . . . the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.").

In other words, once the case was submitted to the trier of fact, the legal framework used and the question of whether Gibson's proof contained direct or circumstantial evidence became irrelevant. The jury's task at that point was to simply determine whether or not unlawful discrimination was the real reason for the adverse employment action. Regardless of the framework used for presenting the proof, the underlying substantive law is the same. *Desert Palace v. Costa*, 123 S. Ct. 2148 (2003) (holding, in a mixed-motive employment discrimination case that, regardless of the presentation of direct or circumstantial evidence, the plaintiff must prove that unlawful discrimination was a motivating factor in the employment decision by a preponderance of the evidence).

This is precisely the view of the law that the district court's jury instructions, taken as a whole, reflected. Gibson had

established his prima facie case of unlawful discrimination. Consequently, the jury instructions focused on the last two parts of the *McDonnell Douglas* framework by advising the jury of the considerations to take into account in deciding whether Gibson had proven that he was unlawfully discriminated against. First, the district court quoted the language of the FMLA and informed the jury that "it would have been unlawful for the City of Louisville to terminate [Gibson] in retaliation for exercising or attempting to exercise his rights under the statute." The jury was then asked the question that is the focus of Gibson's appeal, i.e., "do you find from the evidence that the City of Louisville terminated Kin Gibson from his job because he requested FMLA leave?" This question was immediately followed by a discussion of points to keep in mind when answering it. The district court reminded the jury of the reasons proffered by the City of Louisville for his termination—the legitimate nondiscriminatory reasons—and it told the jury that "in order to return a verdict in favor of Mr. Gibson, you must believe from [the] evidence that those were not the City's actual reasons for discharging Mr. Gibson."

Perhaps the instructions in the present case would have been more precise if they had explicitly said that Gibson need show that requesting FMLA leave was only "*a* determining and motivating factor" in the City's decision. *Reeves,* 530 U.S. at 153 (emphasis added). The lack of such language, however, did not cause the instructions overall to be an inaccurate statement of the law in the present case. Indeed, the Supreme Court has held that the use of the words "because of" in Title VII do not mean "solely because of." *Price Waterhouse*, 490 U.S. at 241. There is no question that the jury was told to determine whether the City's proffered reasons were its true motivation, or whether it was motivated by unlawful discrimination in terminating Gibson; i.e., was Gibson fired "because he requested FMLA leave?" In other words, the jury was clearly charged with answering the ultimate question—whether Gibson was the victim of unlawful discrimination in violation of the FMLA.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.