**Phyllis A. COULTER, Plaintiff–Appellant,**

v.

**DELOITTE CONSULTING L.L.C., Defendant–Appellee.**

No. 02–1906.

United States Court of Appeals, Sixth Circuit.

Nov. 4, 2003.

Julie A. Gafkay, Robert D. Kent-Bryant, Law Office of Glen N. Lenhoff, Flint, MI, for Plaintiff–Appellant.

Elizabeth Hardy, Thomas B. Langlas, Kienbaum, Opperwall, Hardy & Pelton, Birmingham, MI, for Defendant–Appellee.

Before MARTIN and SUTTON, Circuit Judges; and MILLS, District Judge.[*]

* The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

OPINION

MILLS, District Judge.

In the instant appeal, Phyllis A. Coulter contends that Deloitte Consulting L.L.C., unlawfully retaliated against her when it terminated her employment for taking a leave of absence which was protected and/or guaranteed by the Family and Medical Leave Act.

In granting Deloitte Consulting's motion for summary judgment, the district court held that, although she had established her *prima facie* case of retaliation under the Family and Medical Leave Act, Coulter had failed to create a genuine issue of material fact as to whether Deloitte Consulting's proffered reasons for her termination were a mere pretext for discrimination.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Phyllis A. Coulter began working for Deloitte Consulting L.L.C. ("Deloitte"), as the director of administration of Deloitte's Detroit office on June 7, 1999. Kevin Gromley, Deloitte's managing partner for its Detroit office, hired Coulter to replace Janice Caloia who was retiring,[1] and Coulter reported directly to Gromley. As the director of administration, Coulter hired and supervised the Detroit office's administrative staff, tracked schedules, performed financial monitoring, assisted in Deloitte's compensation planning, monitored compliance with Deloitte's policies and internal control procedures, monitored and directed capital purchasing, attended partner meetings, and responded to partners' requests.

In June 2000, Coulter informed Deloitte that she needed to take a medical leave of absence in order to undergo the surgical removal of several fibroid tumors. Deloitte approved Coulter's leave of absence pursuant to the Family and Medical Leave Act ("FMLA") to be effective on June 15, 2000.[2] During Coulter's absence, Deloitte re-hired Caloia as a part-time consultant in order to train Lisa Kinsman so that Kinsman could fill in for Coulter until she returned to work.

Also during Coulter's absence, Deloitte began its annual performance review process which commenced in June or July each year. Because Coulter's leave of absence coincided with her first annual performance review, Gromley conducted her evaluation while she was on her leave of absence.[3] While Coulter was on leave, Gromley received negative comments about Coulter's performance from Caloia. Specifically, Caloia informed Gromley that Coulter had given budget reports to a subordinate who was not involved in compensation, misfiled salary reports, misplaced the fiscal year 2000 compensation information, left base salary reports in sealed envelopes from January 2000 and had failed to review them for payroll errors, and had not filed many salary reports since August 1999.

However, Gromley kept Caloia's information confidential as not to unduly influence his colleagues' assessment of Coulter's performance. In fact, Gromley's own

---

1. Deloitte retained Caloia as a part-time consultant during the summer of 1999 in order to provide training to Coulter.

2. Coulter's FMLA leave of absence was subsequently extended by Deloitte from July 30, 2000, to August 16, 2000, due to complications sustained by her following surgery.

3. Because she did not begin her employment with Deloitte until June 1999, Coulter was not scheduled to receive a performance appraisal until the summer of 2000.

report indicated that Coulter met his expectations in the areas of time management, communication, adaptability, and creativity.

Nevertheless, other staff members reiterated Caloia's criticisms of Coulter's work performance. Specifically, staff members advised Gromley that Coulter was unresponsive to requests for information, failed to run reports of employees' hours, lost employee data, did not communicate well, and failed to pay sufficient attention to detail in regard to the payroll.

More importantly, the partners expressed their dissatisfaction with Coulter's job performance to Gromley. At the partners' meetings on June 26, 2000, and again on July 17, 2000, the partners advised Gromley that Coulter was not meeting their expectations, had lost their respective confidence, and should be replaced. Specifically, the partners told Gromley that they were dissatisfied with: (1) Coulter's unresponsiveness to their requests, (2) her failure to run hour reports, (3) her insufficient attention to detail, (4) her tardiness and insufficient hours in the office, (5) her lack of understanding regarding the financial systems, (6) her improper management of the office schedule, (7) her failure to return telephone calls promptly, (8) and her overall inability to function as the director of administration. In fact, the partners reported that Coulter's inefficiency had prompted them to work around her in order to care for their own needs.

Based upon all of this information, Gromley decided to terminate Coulter. Accordingly, Gromley met with Coulter at an off-site location on the night before she was scheduled to return to work from her FMLA leave of absence and terminated her employment with Deloitte.

In October 2000, Coulter filed a Complaint in the Wayne County Circuit Court alleging that Deloitte had fired her in retaliation for invoking her right to take a leave of absence under the FMLA and also alleging racial discrimination in violation of Michigan's Elliott–Larsen Civil Rights Act. Subsequently, Deloitte removed the case to federal district court, and the district court dismissed Coulter's state law claim pursuant to the parties' stipulation.

After the close of discovery, the district court granted Deloitte's motion for summary judgment on Coulter's FMLA retaliation claim. Specifically, the district court held that, even assuming that she had established a *prima facie* case of retaliation under the FMLA, Coulter had failed to demonstrate a genuine issue of material fact as to whether Deloitte's proffered reasons for terminating her were pretextual. Coulter then filed a timely notice of appeal challenging the district court's order granting summary judgment in Deloitte's favor.

## II. ANALYSIS

As this Court has oft times repeated, we review a district court's grant of summary judgment *de novo*. *Smith v. Wal–Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999). Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The FMLA entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons. 29 U.S.C. § 2612(a)(1). The FMLA further ensures that an employee will be restored to the same or an equivalent position upon returning to work following a FMLA leave of absence. *Id.* § 2614(a)(1). An employer may not retaliate against an employee who exercises his right under the FMLA. *Id.* § 2615. Finally,

[i]n *Skrjanc v. Great Lakes Power Service Company*, 272 F.3d 309 (6th Cir. 2001), this court held that the *McDonnell Douglas* burdenshifting framework should be applied to FMLA retaliation claims that are based upon indirect evidence. *Id.* at 315.... Under *McDonnell Douglas*, a plaintiff relying upon indirect evidence of unlawful discrimination must first establish a *prima facie* case. The employer then has the burden of articulating a legitimate nondiscriminatory reason for the adverse employment action. Finally, the plaintiff must show that this nondiscriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action.

*Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir.2003).

In the instant case, we, like the district court, focus our attention on the third prong of the *McDonnell Douglas* test, *i.e.* whether Coulter has created a genuine issue of material fact regarding the pretextual nature of Deloitte's reasons for her termination. Coulter "may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir.2000).

As a general matter, Coulter argues that the district court erred in entering summary judgment against her because, in doing so, the district court did not view all of the evidence and all of the factual inferences reasonably drawn from the evidence in a light most favorable to her. As for the specific evidence presented to the district court which she claims establishes

pretext, Coulter cites: (1) the timing of Deloitte's decision to terminate her; (2) the fact that, prior to her termination, she had never been the subject of any disciplinary action; (3) the fact that she received no warning prior to her discharge; (4) Paul Ottolini's [4] e-mail message wherein he indicated that she would be kept in her job; (5) the factual inaccuracies made by the partners and Caloia to Gromley and the factual inaccuracies contained within several e-mail messages regarding her job performance; and (6) the fact that, even if the Court finds that this evidence individually does not establish pretext, the entire process of her termination is highly suspicious and appears to be an after-the-fact rationalization or justification for her discharge rather than the true reason, discriminatory animus.

After reviewing the record, we conclude that none of the evidence upon which Coulter relies is sufficient—either taken individually or collectively—to create a genuine issue of material fact regarding pretext. Accordingly, we affirm.

As acknowledged by the district court, although the timing of her discharge seems suspect given the fact that she was fired on the night immediately preceding the day upon which she was scheduled to return to work, this discriminatory appearance is vitiated by the undisputed fact that her FMLA leave of absence coincidentally coincided with Deloitte's annual review period, and no deviation occurred from the regularly scheduled performance reviews planned for June or July 2000. In addition, as we have previously explained, "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir.2001); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir.1986).[5]

---

4. Ottolini was a regional controller for Deloitte.

5. Moreover, the temporal proximity argument is particularly unconvincing where a plain-

Furthermore, Coulter was an at-will employee, and thus, she was subject to termination without warning, notice, cause, or prior disciplinary action. In this respect, *Harrison v. Metropolitan Gov't of Nashville and Davidson County, Tennessee*, 80 F.3d 1107 (6th Cir.1996), which Coulter relied upon, is distinguishable in that the *Harrison* court was specifically addressing a claim of discrimination in the context of progressive disciplinary procedures, not a claim of retaliation as is the case here. More to the point, Coulter has not presented any evidence to show that Deloitte's own policies required it to reprimand or warn her prior to firing her.[6] *See Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police*, 91 F.3d 836, 845 (6th Cir.1996)(noting that "in response to his claim that he was not counseled before his termination, Burns offers no evidence that the City was required to do so....").

As for the e-mail message from Ottolini, Coulter has misconstrued its impact upon her case. The e-mail message did not evaluate Coulter's work performance; rather, it simply referred to upcoming structural changes within Deloitte. In any event, Ottolini sent the e-mail message prior to Coulter's performance appraisal, and as a non-partner, whatever his evaluation of her job performance was, it was irrelevant to the partners' loss of confidence in her ability to perform her job.

Finally, regarding the alleged factual inaccuracies noted by Coulter, she has offered nothing to rebut Deloitte's factual assertions and articulated reasons for her discharge other than bare denials and her subjective beliefs-both of which are an insufficient basis upon which to vacate summary judgment. *See Gribcheck v. Run-*

*yon*, 245 F.3d 547, 552 (6th Cir.2001)(holding that "[a] 'blanket denial [of] the employer's articulated reasons ... is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive.' ")(quoting *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir.1987)); *see also Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir.1996)(holding that "[i]t is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance.").

In short, Coulter's case continues on appeal to suffer from the same deficiency which was noted by the district court: Coulter has wholly failed to present any evidence to challenge Deloitte's assertion that it terminated her because the partners for whom she worked had lost confidence in her ability to manage the Detroit office and to effectively perform the functions and responsibilities of the director of administration.

## III.  CONCLUSION

Accordingly, for the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

tiff's *prima facie* claim of retaliation is otherwise weak. *Nguyen v. City of Cleveland*, 229 F.3d 559, 567 (6th Cir.2000). As will be discussed, *infra*, Coulter's other evidence of pretext is weak.

6. In fact, the record demonstrates just the opposite; Gromley had identified and discussed certain performance deficiencies with Coulter prior to her termination.