File Name: 05a0843n.06
Filed: October 12, 2005

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANTHONY M. STEFANSKI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| W.W. GRAINGER, INC., and | ) | COURT FOR THE NORTHERN |
| GREGORY EMMERICK, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendants-Appellees. | ) | |

Before:     **NELSON** and **MOORE**, Circuit Judges, and **RESTANI**, Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  The plaintiff in this employment case asserted

claims of retaliation under the Family and Medical Leave Act, employment discrimination

based on age, failure to make reasonable accommodations under the Americans with

Disabilities Act, and breach of contract.  The district court granted a defense motion for

summary judgment as to all claims, and the plaintiff has appealed.

Upon de novo review, we conclude that no reasonable jury could find that the adverse

employment actions complained of were motivated by the plaintiff's age or by his taking of

medical leave.  Nor could a reasonable jury find, on this record, that the plaintiff was

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of
International Trade, sitting by designation.

disabled or that his employer owes him money under an employment contract. We shall

therefore affirm the judgment entered by the district court.

I

The plaintiff, Anthony Stefanski, became an employee of the defendant, W.W.

Grainger, Inc., when that company bought his previous employer in 1990. In 1995, or

thereabouts, Mr. Stefanski was assigned to a sales position that carried the title of "national

accounts manager." In this capacity Stefanski reported to a director of national accounts.

He was also supervised by a regional sales manager. Stefanski's assignment entailed travel

throughout the country, and as a national accounts manager he was expected to work more

than 40 hours per week on a regular basis.

Under the present posture of the case, we must take it as true that regional sales

manager Mike Haskins, one of Stefanski's supervisors, made several remarks evincing an

"ageist" attitude toward him. In 2001 and earlier Haskins said that Stefanski was "as old as

dirt." Haskins also told Stefanski, while the two were golfing together, that Stefanski

"sweated like an old man." Stefanski was born in 1951, and Haskins is "a couple years

younger," Stefanski judged.

When Mr. Stefanski began reporting to a new director of national accounts, Al

Naramore, Haskins told Naramore that Stefanski underperformed and had a poor work ethic.

Naramore, who had worked with Stefanski previously, told Stefanski of Haskins' comments

but said that as far as he (Naramore) was concerned, Stefanski "was still working under a clean slate." Nevertheless, according to Stefanski, Naramore became hostile toward him and began assigning him "impossible" tasks.

In February of 2001 Naramore began documenting several problems with Stefanski's performance, including failure to meet sales goals, missed deadlines and assignments, and lack of follow-through on commitments to customers. In July of 2001 Naramore initiated a disciplinary process by asking Stefanski to prepare a 90-day business plan.

Stefanski did not submit the requested plan. Instead, in August of 2001, he went on medical leave for major depression and generalized anxiety disorder. Shortly before the leave began, one of W.W. Grainger's customers, Corporate United, asked that its account be reassigned. Another W.W. Grainger customer, Owens Corning, made a similar request while Stefanski was on leave. Both customers complained that Stefanski had been insufficiently responsive to their inquiries. These customers' accounts were "transitioned" to other national accounts managers during Stefanski's leave.

By the time Mr. Stefanski returned to work, which was in November of 2001, Paul Keyser had replaced Al Naramore as director of national accounts. Keyser immediately gave Stefanski a written "counseling statement" based on information he had received from Naramore, Haskins, and George Emmerick, a human resources manager. The counseling statement assigned specific steps to be taken to improve Stefanski's performance and warned that "[f]ailure to complete these tasks . . . may place employment with Grainger at risk."

In March of 2002 Keyser gave Stefanski another counseling statement. This one noted some progress but also noted Stefanski's failure to meet certain "plan milestones." Additional performance problems were documented in April and May of 2002, and Mike Kazmerski, who replaced Keyser in April, put Stefanski on a formal disciplinary program in July of 2002.

When Mr. Stefanski returned from medical leave in November of 2001, his psychologist had recommended that he work no more than 40 hours per week, that he not travel by air, and that he not take trips requiring an overnight stay. Kazmerski told Stefanski in the fall of 2002 that the national accounts manager job could not be performed with these limitations. Upset by this, Stefanski contemplated suicide. Ultimately, however, Stefanski took two weeks of vacation time and then began another medical leave. He never returned to work at W.W. Grainger.

In May of 2002 Mr. Stefanski sued W.W. Grainger and human resources manager Emmerick in an Ohio court of common pleas. The defendants removed the case to federal district court. An amended complaint filed in November of 2002 set forth claims of retaliation under the Family and Medical Leave Act, age discrimination, failure to accommodate under the Americans with Disabilities Act, and breach of contract. (Two additional claims, invasion of privacy and defamation, are no longer being pursued.)

The defendants moved for summary judgment, and the district court granted the motion as to all claims. Mr. Stefanski filed a timely notice of appeal to this court.

II

A

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, prohibits employers from retaliating against employees for the exercise of rights provided by the Act. See 29 U.S.C. § 2615(a)(1). To make out a prima facie case of retaliation using indirect evidence,[1] a plaintiff must show that he exercised a right protected by the Act, that he was adversely affected by an employment decision, and that proximity in time suggests a causal connection between the exercise of the protected right and the adverse employment decision. See *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001). The defendant then bears the burden of articulating a legitimate reason for the adverse action. See *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003). If this burden is carried, the plaintiff can salvage his prima facie case by demonstrating that there is a jury question as to whether the defendant's stated reason is a pretext for unlawful discrimination. See *id.*

The district court assumed that Mr. Stefanski had made out a prima facie retaliation case by showing that the Corporate United and Owens Corning accounts were taken from him during his medical leave and that he was given a "counseling statement" immediately upon his return to work. The court concluded, however, that there was no genuine issue as

---

[1]Mr. Stefanski does not contend that there is direct evidence of FMLA retaliation here.

to whether W.W. Grainger's stated reasons for these actions were pretexts for FMLA retaliation. We agree.

Uncontroverted evidence shows that both of the corporate accounts that were taken away from Mr. Stefanski were taken away only after the companies requested a new account manager because of Stefanski's performance. Notes kept by Mr. Naramore state that Corporate United's president asked him on August 1, 2001, to reassign that company's account because Stefanski "had scheduled several face to face meeting[s] as well as several conference calls over the past few months and . . . did not show up on the call or for the meetings without any notice to reschedule." A subsequent e-mail to Mr. Naramore from a Corporate United vice president reiterated that Stefanski "ha[d] missed meetings [and] conference calls" and had "not followed through at customers where he told us he would." Similarly, Mr. Naramore's notes state that a representative of Owens Corning asked him to reassign that company's account because of Mr. Stefanski's failure to respond to inquiries beginning in February of 2001.

Mr. Stefanski points to evidence that W.W. Grainger terminated its relationship with Corporate United after the account was reassigned and that W.W. Grainger had "billing issues" with the Owens Corning account. There is no evidence, however, that W.W. Grainger instructed Stefanski to neglect the Corporate United account or that Owens Corning's complaints about Stefanski had anything to do with "billing issues." None of the evidence identified by Stefanski suggests that W.W. Grainger's decision to "transition" the

accounts was not in fact motivated by the customers' requests. We do not think a reasonable jury could find that Stefanski's FMLA leave was the real reason for that decision.

As for the counseling statement issued by Mr. Keyser upon Mr. Stefanski's return to work in November of 2001, it is undisputed that a disciplinary process had been initiated by Mr. Naramore before Stefanski went on leave. Naramore's notes document Stefanski's performance problems beginning in February of 2001, and the 90-day business plan that Naramore asked Stefanski to prepare in July of that year was intended to be a tool for improving Stefanski's performance. Given that Stefanski did not submit the requested plan before taking medical leave, there is nothing suspect about Keyser's having continued the disciplinary process upon Stefanski's return by issuance of the counseling statement requiring him to take specific steps to improve his performance.[2]

Mr. Stefanski argues that an improper motive for the counseling statement can be inferred from the fact that Mr. Keyser relied, in part, on information he received from human resources manager George Emmerick. There is evidence that Emmerick believed Stefanski was "faking" his depression and anxiety. But there is no evidence that Emmerick communicated this belief to Keyser or that Keyser's decision to counsel Stefanski was based

---

[2]Mr. Stefanski contends that his sales performance was in fact quite good. Be that as it may, there is no dispute that Naramore documented performance issues and initiated a disciplinary process *before* Stefanski took FMLA leave. In these circumstances, we believe, it cannot be inferred that continuation of the disciplinary process was motivated by Stefanski's taking of leave.

on Emmerick's belief.[3]  In sum, we are not persuaded that a reasonable jury could find

Keyser's issuance of the counseling statement to have been motivated by Stefanski's taking

medical leave.

B

Mr. Stefanski presented claims of age-based employment discrimination under both

federal and state law.  See 29 U.S.C. § 623(a)(1); Ohio Rev. Code § 4112.14(A).  Claims

brought under the two statutory schemes are analyzed in the same way.  See *Little Forest

Medical Center v. Ohio Civil Rights Commission*, 575 N.E.2d 1164, 1167 (Ohio 1991), *cert.

denied*, 503 U.S. 906 (1992).

An employee may prove a claim of age discrimination using either direct or

circumstantial evidence.  See *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th

Cir. 2003) (en banc).  (The distinction between "direct" and "circumstantial" might puzzle

philosophers, but it does not seem to bother lawyers and judges.)  "Direct evidence is that

evidence which, if believed, requires the conclusion that unlawful discrimination was at least

a motivating factor in the employer's actions."  *Id.* (internal quotation marks omitted).

Circumstantial evidence allows an inference that unlawful discrimination occurred.  See *id.*

---

[3]Were a jury to find as a fact that Stefanski had been subjected to an adverse action because the company's decision-makers believed in good faith that he was faking illness, an interesting question would be presented as to whether the company could be held liable for retaliation under the FMLA.  Having concluded that there would be no basis for such a jury finding, however, we have no need to address this question.

1

Mr. Stefanski argues he has presented direct evidence that his age motivated W.W. Grainger's reassignment of the Corporate United and Owens Corning accounts and the disciplinary actions taken by Messrs. Keyser and Kazmerski in 2001 and 2002. We are not persuaded that he has done so.

Stefanski relies first on statements made by Rob Rooney, who immediately preceded Naramore as director of national accounts. But there is no evidence that Rooney's statements — references to Stefanski's experience and status as a "senior person" at W.W. Grainger — were in any way related to the adverse actions of which Stefanski complains. It is undisputed that Rooney was no longer Stefanski's supervisor when the adverse actions were taken, and Stefanski has not suggested that Rooney influenced Naramore, Keyser, or Kazmerski.

Second, Stefanski relies on remarks by Haskins. In addition to the "old as dirt" and "old man" comments recounted above, Stefanski says that Haskins called him "old news" in a meeting with other supervisors. And in a 1998 performance evaluation, Haskins wrote that Stefanski was "[o]ld Bossert baggage" — a reference, we gather, to Stefanski's previous employment with Bossert Industrial Supply, now a division of W.W. Grainger. Again, there is no evidence that any of Haskins' animadversions was made in connection with W.W. Grainger's decisions to take adverse actions against Stefanski. Some of the remarks substantially predated the adverse actions, and none of them has been shown to have

influenced W.W. Grainger's decision-making. (Keyser testified that he based the November 2001 counseling statement on information received from Haskins, among others, but he did not testify that Haskins' input had anything to do with Mr. Stefanski's age.)

There is no evidence that Naramore, Keyser, or Kazmerski ever made comments about Stefanski's age or otherwise exhibited hostility toward older workers. The case at bar is thus distinguishable from *Wexler*, where there was evidence that the decision-makers had made "statements evinc[ing] a discriminatory intent" at "the very time" of the adverse action. *Wexler*, 317 F.3d at 572.

2

Absent direct evidence of discrimination, Mr. Stefanski has the burden of establishing a prima facie case by showing (1) that he was at least 40 years old at the time of the alleged discrimination, (2) that he was subjected to an adverse employment action, (3) that he was qualified for his position, and (4) that similarly-situated younger workers received better treatment than he did. See *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). If such a showing is made, the company must then state a non-discriminatory reason for its actions. If that is done, Stefanski must show the stated reason to be a pretext for unlawful discrimination. See *Burzynski*, 264 F.3d at 622.

Mr. Stefanski has failed to show that similarly situated younger workers received better treatment from W.W. Grainger than he did. First, Stefanski presented no evidence that W.W. Grainger allowed younger account managers to retain accounts that the customers themselves had asked to have reassigned. Second, although there is evidence that W.W. Grainger did not discipline two younger account managers whose sales growth numbers were inferior to Stefanski's in 2001,[4] those employees have not been shown to be similarly situated. As we have said, Stefanski was not disciplined because of his sales results alone, but also because of his failure to follow through on customer commitments, his failure to complete assigned reports, and his failure to meet deadlines. There is no evidence that any other account manager had similar problems.[5]

Even if Mr. Stefanski's indirect evidence established a prima facie case, submission of the age discrimination claim to a jury would still be unjustified. W.W. Grainger's unrebutted evidence shows that the reassignment of Stefanski's Corporate United and Owens Corning accounts was precipitated by the customers' own requests. Those requests were expressly grounded on Stefanski's unresponsiveness, not on any actions attributable to W.W.

---

[4]Stefanski contends that three underperforming account managers were not disciplined, but the record reflects that Keyser verbally counseled one of the employees in question.

[5]Mr. Stefanski argues that he established the fourth element of his prima facie case by showing that the Corporate United account was given to a younger account manager. We find this argument unpersuasive. The Corporate United account was cancelled following its reassignment, and the other reassigned account, Owens Corning, was given to an employee in her early 50s.

Grainger. We do not think a reasonable jury could find that the stated reason for the reassignment of accounts was a pretext or that Stefanski's age motivated the reassignment.

The disciplinary actions against Mr. Stefanski present a somewhat closer question, given Mr. Keyser's testimony that the initial counseling statement was based, in part, on information he received from Mr. Haskins. But, to repeat, there is no evidence linking Haskins' age-related comments to any of the counseling statements issued by Keyser and Kazmerski. This court has said that

> "statements allegedly showing an employer's age bias are to be evaluated by considering four factors: (1) whether the statements were made by a decision-maker or an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the [adverse action]." *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002).

We can find no evidence that Haskins was a decision-maker with respect to the counseling of Stefanski or that any of Haskins' age-related comments was made in connection with the decision-making process. The comments were isolated, and many of them were not temporally proximate to the disciplinary actions.

Again, there is no evidence whatever that the decision-makers — Messrs. Keyser and Kazmerski — harbored any bias against older workers. Stefanski presented affidavits of three salesmen who say that W.W. Grainger fired them because of their age, but those salesmen were not national accounts managers under the supervision of Keyser and Kazmerski. Their supervisors were Haskins and district sales manager Sam DiMeo. Perhaps

Haskins had a bias against older workers, but there is no evidence that any such bias on his part was a factor in disciplinary actions initiated by Keyser and Kazmerski.

Mr. Stefanski contends that the stated basis for his discipline must have been false because he did not have any genuine performance problems. But the only evidence he cites relates to sales growth in 2000 and 2001 and his receipt of a sales-related bonus in 2002. None of this evidence contradicts W.W. Grainger's proof that Stefanski missed deadlines, failed to complete assigned work, and ignored commitments that he had made to customers. Viewing the record as a whole, we are not persuaded that Stefanski has raised a genuine issue as to pretext.

C

The Americans with Disabilities Act, 42 U.S.C. §§ 12111 *et seq.* ("ADA"), prohibits covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). For ADA purposes, "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee . . . ." *Id.* § 12112(b)(5)(A).

To prove a failure-to-accommodate claim under the ADA, a plaintiff must show that he has a disability, that he is otherwise qualified for his position, and that the defendant refused to make a reasonable accommodation. See *Smith v. Ameritech*, 129 F.3d 857, 866

(6th Cir. 1997). In the case at bar the district court assumed that Mr. Stefanski was disabled, but the court held that there was no genuine issue as to whether W.W. Grainger refused to make accommodations. We do not reach the latter question, because we conclude that Stefanski failed to meet the threshold requirement of demonstrating that he had a disability.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more . . . major life activities." 42 U.S.C. § 12102(2). Stefanski has not identified any "major life activities" that were "substantially limited" by his depression and anxiety. The only evidence in this regard is a letter from Stefanski's psychologist to his lawyer, wherein the psychologist suggested generally that Stefanski's condition "impacts or diminishes" his "Activities of Daily Living." The psychologist did not recommend any restrictions on Stefanski's work activities beyond a 40-hour workweek, no air travel, and no overnight stays when traveling. Those restrictions do not reflect any substantial limitation of major life activities. Accordingly, summary judgment was proper regardless of whether W.W. Grainger refused to make a reasonable accommodation.

D

Mr. Stefanski's breach of contract claim is based on W.W. Grainger's failure to pay him approximately $4000 that he says he is owed. Stefanski has not identified the contractual terms under which the debt allegedly arose. He has shown neither a promise to

pay nor performance entitling him to payment.  On this record, no reasonable jury could find

that W.W. Grainger committed a breach of contract.

**AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, concurring.** I concur with the majority opinion except for part II.B.2. I believe that Mr. Stefanski has established a prima facie case of age discrimination. Nonetheless, because he has failed to establish a genuine issue of material fact regarding pretext, the district court properly granted summary judgment on the age-discrimination claims.