**NOT RECOMMENDED FOR PUBLICATION**
File Name: 05a0965n.06
Filed: December 14, 2005

**No. 04-4380**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

TONDA SIGALL-DRAKULICH,

    **Plaintiff-Appellant,**

v.

CITY OF COLUMBUS,

    **Defendant-Appellee.**

                  /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO**

**BEFORE:**     **SILER and CLAY, Circuit Judges; MILLS, District Judge.**[*]

    **CLAY, Circuit Judge**. Plaintiff, Tonda Sigall-Drakulich, appeals the district court's grant of summary judgment to Defendant City of Columbus on Plaintiff's Title VII and Ohio Revised Code Chapter 4112 claims. Plaintiff alleges that the City of Columbus intentionally discriminated against Plaintiff on the basis of Plaintiff's gender when the City failed to promote Plaintiff and instead promoted a male candidate into the available position. Because Plaintiff has failed to produce more than a scintilla of evidence that the City's reason for Plaintiff's nonpromotion was pretextual, this Court affirms the district court's grant of summary judgment in this case.

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

**BACKGROUND**

**I.      Procedural History**

Plaintiff filed an action in United States District Court for the Southern District of Ohio on April 22, 2002 and amended her complaint on September 23, 2002.  The amended complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, Ohio Revised Code Chapter 4112, and state tort and civil conspiracy laws.  The amended complaint named as defendants the City of Columbus and the City of Columbus Civil Service Commission, along with City of Columbus employees Barbara Gates McGrath, Chester Christie, and Michael Vance.

Defendants filed their answers to Plaintiff's complaint on February 4, 2003 and moved for summary judgment on March 5, 2004 on all claims.  Plaintiff opposed the motions for dismissal only with respect to the Title VII and state law gender discrimination claims against the City of Columbus, Defendant in the appeal at bar.  The district court granted Defendants' motions for summary judgment in their entirety on August 11, 2004.  Plaintiff timely filed her notice of appeal on September 8, 2004.

**II.     Substantive Facts**

The facts revolve around the City of Columbus's decision to create and fill a new position of citywide Occupational Safety and Health  Manager ("Safety Manager").  The City first posted the position in May 1999, and as initially posted, the position had as minimum requirements two years experience managing an occupational safety and health program and certification either as a Safety Professional (CSP) or Industrial Hygienist (CIH).

A City of Columbus selection committee screened applicants for the position in late 1999.

The selection panel consisted of Eugene Brundige, Chief Labor Negotiator and Deputy Director of Human Resources; Al Skinner, Chief Steward for the American Federation of State, County and Municipal Employees Ohio Council ("AFSCME"); Mike Vance, President of the Columbus Municipal Association of Government Employees ("CMAGE"); and Laura Raica, Employee Benefits/Risk Manager. Brundige's office had primary responsibility to fill the position. Mike Vance's union represented City supervisory and managerial personnel. Al Skinner's union represented City nonsupervisory civilian employees, the largest contingent of City employees. Additional City of Columbus personnel participated in interviews of a subset of candidates, including Thomas Finnegan, an industrial hygienist. Eugene Brundige, as the Department of Human Resources representative, was charged with overseeing the reorganization of the City's safety management program, including the hiring of the City Safety Manager.

Plaintiff applied for the position in September 1999. At the time, Plaintiff had 31 years of public sector experience, most of it in the safety and health fields, and the requisite CSP certification. Since 1993 Plaintiff had held the position of Department Safety Coordinator in the City's Department of Parks and Recreation. Plaintiff had designed and developed a number of occupational health and safety programs during her career, some of which received state-wide recognition. The employee ultimately offered the job by the City, Rick Brewer, also submitted his application for the position at this time, but did not make it past the initial review of resumés because he lacked one of the required certifications.

After an external candidate was offered and then declined the position, Plaintiff was one of three candidates given final interviews in with Carolyn Nellon, the City Director of Human

Resources. The Director of Human Resources is the appointing authority for the Department, holding the sole authority to hire and promote employees within the Department of Human Resources, the department into which the successful candidate would ultimately be hired. No offers were extended at that time. A September 14, 2000 memorandum from the selection committee to the Director of Human Resources, detailing the selection process, notes that the committee declined to recommend any of the finalists for the position at the time — 1) Plaintiff, 2) Keith Nichols (another City employee), and 3) an external contender — due to deficiencies in the applicants' "diplomacy and scope of experience, leadership skills exhibited in the present position, and relative inexperience, respectively." (J.A. at 77.)[1]

In January 2000 the then-Director of Human Resources, Carolyn Nellon, left her position and was replaced by Chester Christie in February 2000. Christie reports that Brundige informed him that the reorganization program was aimed at the civilian safety programs, that the effort was a cooperative one between the City and AFSCME, and that union support of the selected manager would be essential to the reorganization's success. Christie also reports that Brundige shared a memorandum received from Al Skinner, the AFSCME Chief Steward, that opined that neither Plaintiff nor the other City employee-applicant for the position, Keith Nichols, would be suitable

---

[1]Plaintiff contends that the authenticity of this memorandum is suspect because 1) the letterhead refers to Carolyn Nellon as Director of Human Resources when, at the time of the memorandum, Chester Christie was actually Director; 2) the memorandum refers to Eugene Brundige as a member of the selection committee when Brundige had, in fact, retired by that time; and 3) the memorandum refers to Plaintiff's lack of diplomacy when a committee member, Mike Vance, did not recall discussing such topic during committee deliberations.

as Safety Manager, and asked the City to continue the search process.[2]

In early 2000, Christie learned that programming for occupational health and industrial hygiene was already being performed by the City Department of Health. In a subsequent conversation with Brundige about revising the position description to reflect the changed scope (eliminating occupational health and industrial hygiene from the position responsibilities), Christie also recalls that Brundige advised Christie that the position's current minimum qualifications would impede the City's ability to "attract individuals who could fulfill the needs of the position and that unless we expanded the pool of applicants we would have difficulty filling the position." (J.A. at 102.) Accordingly, Christie directed Brundige to work with the City Civil Service Commission to revise the position scope and minimum qualifications.

In June 2000 the Civil Service Commission recommended a change to the position's scope and minimum qualifications. The changes initially did away with the certification requirements in their entirety and replaced them with requirements for a bachelor's degree and four years experience. The memorandum from the Civil Service Commission staff to its Commissioners recommending the qualifications change stated that:

> [t]his request is a result of a nationally focused recruitment that has been ongoing for the past year that has been unable to yield any qualified candidates to fill this position. Although [the Department of Human Resource's] recruitment revealed several very interested and credible candidates, none have had the certification that is required at the time of application.

---

[2]Plaintiff also challenges the authenticity of this memorandum because 1) it appears to be the second page of a facsimile transmission, and 2) it was dated between the tenure of Carolyn Nellon and Chester Christie, a period of time during which the "hiring process would have been put on hold." (J.A. at 16-17.)

(J.A. at 68.) Barbara Gates McGrath, the Executive Director of the Civil Service Commission, stated that when she learned that several candidates indeed had presented the requisite certification, she "looked into it. Based on my review, I believe this statement to be the result of a miscommunication between the Department of Human Resources and my staff." (J.A. at 92.) A contemporaneous letter from Christie to the President Pro-tem of the Columbus City Council noted that "[t]he intent in amending the minimum qualifications is to broaden the scope of viable prospective candidates we are able to attract . . . ." (J.A. at 152.)

The changed position description and minimum qualifications were scheduled for discussion at the July 2000 public meeting of the Civil Service Commission. Plaintiff intended to speak against the changes at the meeting. The discussion of the position, however, was pulled from the meeting's agenda before Plaintiff had an opportunity to speak.

One week after the July 2000 Civil Service Commission meeting, the commission again modified the position requirements to permit either a bachelor's degree and four years experience *or* the requisite CSP or CIH certifications and two years experience. The commission explained that it was not the intention of the revision to exclude those previously meeting the position's minimum qualifications, and that the commission had misunderstood the CSP and CIH requirements themselves to include a bachelor's degree. The commission explained that it had since learned that both the CSP and CIH had clauses which permitted some certification holders to qualify without the bachelor's degree.

The revised employment opening was posted from August 17, 2000 through August 23, 2000. Five days is the default posting period for City of Columbus positions. At that time,

6

additional interviews were done with candidates, including an interview with Rick Brewer. Plaintiff and Keith Nichols also submitted applications for the revised position, but were not interviewed again, although Brundige instructed the committee to consider both Plaintiff and Nichols a part of the current candidate pool. The selection committee then recommended to Christie that Rick Brewer be selected for the position. Christie then interviewed Brewer, Nichols, and Plaintiff and thereafter accepted the recommendation of the selection committee, hiring Brewer in March 2001. In making his final selection, Christie stated that he:

> considered the committee's recommendation, AFSCME's opinion, how the applicants performed during the interviews with me and the applicant's education and background . . . . I relied heavily on the committee's recommendation because its purpose had been to interview the applicants and make a recommendation. Based on the committee's memorandum both labor and management representatives endorsed Rick Brewer. I strongly believed that the Safety Manager had to be able to foster a cooperative working relationship between the City and the unions so the unions' support of the candidate was important to me . . . . I also believe Mr. Brewer far exceeded the minimum qualifications. In addition to possessing a bachelor's degree he also holds a master of science degree in Safety Management. By contrast, [Plaintiff] has a high school diploma.

(J.A. at 104.) At the time of his selection, Brewer had six years experience in occupational health and safety, certification as a Safety and Health Manager from the Institute for Safety and Health Management, and the aforementioned Master of Science in Safety Management.

## DISCUSSION

### I.   PLAINTIFF HAS FAILED TO MAKE A SHOWING THAT DEFENDANT'S HIRING RATIONALE WAS PRETEXTUAL

#### *Standard of Review*

This Court reviews a district court's grant of summary judgment *de novo*. *See DePiero v. City of Macedonia*, 180 F.3d 770, 776 (6th Cir. 1999). Summary judgment is appropriate where the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute as to a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). As the party moving for summary judgment, Defendant bears the burden of showing the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering Defendant's motion for summary judgment, this Court accepts Plaintiff's evidence as true and draws all reasonable inferences in her favor. *Id.* If, as the nonmoving party, however, Plaintiff fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, Defendant is entitled to summary judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

### *Analysis*

This Court finds that the district court did not err in finding that Plaintiff has failed to make a showing that Defendant's rationale was pretextual.

### A.     Title VII and Ohio Rev. Code Chapter 4112

Ohio courts have held that the evidentiary standards and burdens of proof applicable to a claimed violation of Title VII likewise apply when determining whether a violation of Ohio Revised Code Chapter 4112 has occurred.[3] *See, e.g.*, *Mauzy v. Kelly Servs., Inc.*, 664 N.E.2d 1272, 1276

---

[3]The Ohio statute reads:
It shall be an unlawful discriminatory practice:
(A) For any employer, because of the race, color, religion, sex, national origin,

(Ohio 1996). Consequently, this Court looks to federal case law governing Title VII actions when evaluating Chapter 4112 claims. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999). Thus, a failure by Plaintiff to present enough evidence to create a genuine issue of material fact as to any element of her federal claim would be simultaneously fatal to her state law claim. This Court may therefore evaluate both claims concurrently under the Title VII jurisprudence.

**B.      Legal Standard for Title VII Disparate Treatment Claims**

Plaintiff alleges intentional discrimination on the part of Defendant in its hiring for the City Safety Manager. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (2000). In a Title VII case, a plaintiff bears the ultimate burden of persuading the factfinder that the defendant intentionally discriminated against the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). Unlawful discrimination need not be the only reason for an adverse employment action to violate Title VII, but rather need only be an essential component of an employer's mixed motive. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240-41 (1989). A plaintiff may carry the burden by 1) introducing direct evidence which shows that in treating a plaintiff adversely the defendant was motivated by discriminatory intent, or 2) by introducing circumstantial evidence that supports an inference of discrimination. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001).

---

handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev. Code Ann. § 4112.02(A) (2004).

Where, as here, Plaintiff's evidence is circumstantial, a disparate treatment claim proceeds through a three-step framework. In a failure to promote situation, Plaintiff bears the initial burden of making a *prima facie* case that 1) she is a member of a protected class, 2) she applied for and was qualified for the position, 3) she was considered for and denied the promotion, and 4) another employee of similar qualifications who was not a member of the protected class received the promotion. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir. 2001). The *prima facie* test is meant to be a relatively light burden. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (stating that in a Title VII case "the burden of establishing a *prima facie* case of disparate treatment is not onerous").

If Plaintiff carries that burden, then, in the second step of the framework, Defendant must produce a legitimate, nondiscriminatory reason for failing to promote Plaintiff. *Reeves*, 530 U.S. at 142. Defendant's burden is one of production, not persuasion; it involves no credibility assessment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

If Defendant carries its burden, then, in the final stage in the process, Plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason is a mere pretext for intentional discrimination. *Reeves*, 530 U.S. at 142-43. To survive summary judgment, Plaintiff must demonstrate both that Defendant's rationale is incredible and that the true motivation behind her nonpromotion included intentional discrimination because of her gender. *St. Mary's Honor Ctr.*, 509 U.S. at 515 ("[A] reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason."). From an evidentiary standpoint, in some (but not all) cases, sufficient evidence of discriminatory intent may come solely

from the *prima facie* case. *Reeves*, 530 U.S. at 147-48. The factfinder may consider the evidence and inferences from the plaintiff's *prima facie* case, along with other evidence. *Id.* at 143.

Methods of disproving the defendant's reason include demonstrating that the reason 1) had no basis in fact, 2) was not the actual reason, or 3) was insufficient to explain the defendant's action. *Logan*, 259 F.3d at 567. This Circuit has adopted the "honest belief" rule, and Plaintiff cannot demonstrate pretext merely by showing that Defendant's hiring rationale was "mistaken, foolish, trivial, or baseless," *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998), so long as Defendant honestly believed in the rationale and based this belief on particularized facts before it at the time, *id.* at 806-07.

## C.    The District Court's Decision

The district court held that Plaintiff had established her *prima facie* case because she was able to show that she 1) was a member of a protected class (female), 2) was qualified for and applied for the Safety Manager position, 3) was considered for and denied the position, and 4) a white male with arguably similar qualifications was hired instead. The district court also held, however, that the City had set forth legitimate, nondiscriminatory reasons for its hiring actions and produced the associated, requisite evidence. The bulk of the lower court's decision focuses on whether Plaintiff made a sufficient showing that there exists a genuine issue of material fact as to whether the City's reasons were merely a pretext for discrimination. The district court concluded that Plaintiff failed to carry her burden in making a sufficient showing that Defendant's reasons were mere pretext for intentional discrimination against Plaintiff because of her gender. Plaintiff appeals this finding on pretext.

11

**D.      Plaintiff's Evidence of Pretext**

Plaintiff may carry her burden of pretext at the summary judgment stage if she can produce enough evidence to create a genuine issue of material fact about whether the City's reasons 1) have no basis in fact, 2) are not the actual reasons, or 3) are insufficient to explain the hiring of Brewer in lieu of Plaintiff. *Logan*, 259 F.3d at 567. This evidence must be such that a "jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

To carry her burden, Plaintiff challenges each of Director Christie's proffered rationales for his hiring decision — the recommendation of the selection committee, union opposition, the applicants' performance during interviews, and the applicants' education and background. Plaintiff both challenges the documentation relied on by Christie for his hiring decision, and, by extension, the credibility of Christie's reliance on that documentation in reaching his hiring decision. In addition, Plaintiff alleges that a jury could reasonably infer that Christie's hiring rationale is pretextual in light of the entirety of the circumstances surrounding Christie's direction to amend the position qualification.

*1.      The Recommendation of the Selection Committee*

Plaintiff argues that the authenticity of the selection committee's recommendation memorandum of September 14, 2000 is suspect because 1) the letterhead refers to Carolyn Nellon as Director of Human Resources when, at the time of the memorandum, Chester Christie was actually Director; 2) the memorandum refers to Eugene Brundige as a member of the selection committee when Brundige had, in fact, retired by that time; and 3) the memorandum  refers to

Plaintiff's lack of diplomacy when a committee member, Mike Vance, did not recall discussing such during committee deliberations. The City argues that it was common practice to use up old letterhead and that the memorandum clearly refers to Christie as the Director of Human Resources.

Two of the three alleged problems with the memorandum do not, in fact, provide any evidence going to the authenticity of the memorandum. The reference to Brundige was in the background section of the memorandum in the context of a discussion of the first round of interviews in 1999 and does not allude to Brundige's current employment position with the City. Brundige had, in fact, retired just at the end of August 2000, near the conclusion of the selection committee's process. Second, the fact that Vance could not recall in his deposition testimony, taken almost four years after the fact, whether the committee discussed Plaintiff's lack of diplomacy at the time is not evidence that the memorandum lacks authenticity.

Plaintiff correctly points out that the City fails to provide any evidence that City departments regularly use old letterhead. In this respect, Plaintiff does point to an incongruity in Defendant's evidence that this Court should consider. Standing alone, however, this Court believes that this piece of evidence is insufficient to create a genuine issue of material fact regarding the memorandum's authenticity.

### 2. *Union Opposition*

Christie states that he relied, in part, on Skinner's representation that AFSCME did not support Plaintiff's candidacy for the position. Plaintiff contests Christie's reliance on the Skinner representation because Plaintiff questions the authenticity of the memorandum in which this representation was communicated because 1) it appears to be the second page of a facsimile

13

transmission; 2) it was dated between the tenure of Carolyn Nellon and Chester Christie, a period of time during which the "hiring process would have been put on hold;" and 3) Skinner never "voiced his disapproval of [Plaintiff] during the interview panel's discussion of the merits of the various applicants." (Pl. Br. at 16-17.)

In this Court's opinion Plaintiff's "evidence" going to the authenticity of the memorandum is not evidence on this point at all. The date of the memorandum raises no issues as to its authenticity. While the date is between the tenure of Nellon and Christie, the memorandum was addressed to Brundige, who was still heading up the Department's efforts to fill the position, and who was overseeing the Department as Deputy Director during this interim period. Plaintiff does not dispute Brundige's role here. Furthermore, the fact that Vance cannot recall Skinner voicing any objections to Plaintiff in the selection committee's meeting does not go to the memorandum's authenticity. Finally, Plaintiff produces no evidence to call into question Skinner's signature on the memorandum, only that the memorandum appears to be the second page of a facsimile. This is not evidence going to the memorandum's authenticity.

Plaintiff also challenges Christie's reliance on the Skinner memorandum. Plaintiff alleges that AFSCME disapproval is an insufficient reason for hiring Brewer in lieu of Plaintiff because at the time of the hiring process Plaintiff was an elected board member of CMAGE and had been recommended for the position by the president of the City of Columbus firefighters' union. This contention by Plaintiff, however, does not raise a genuine issue of material fact. The position was aimed at civilian workforce safety programs, and AFSCME represented the largest number of City civilian employees. The firefighter's union was not on the selection committee, as AFSCME was,

and the CMAGE representative, Mike Vance, concurred in the recommendation for Brewer. Moreover, Plaintiff does not produce evidence that Christie is dissembling about his reliance on the memorandum.

> ### 3. Interview Performance

Plaintiff also alleges that it is implausible that Christie's interview with Plaintiff could form a rational basis for rejecting Plaintiff's candidacy. Plaintiff contends that Christie failed to inquire into Plaintiff's knowledge, skills, or abilities, or request documentation as to Plaintiff's qualifications for the position. Plaintiff argues that Christie did not, therefore, perform an "interview" with Plaintiff and that a reasonable jury could infer from the "pro-forma" nature of the interview that it was insufficient to inform his decision-making process.

Plaintiff is asking this Court to venture into the territory of telling employers the form and extent of hiring interviews. This Court avers that it would be inappropriate to interfere with a manager's prerogative to conduct interviews in the form and fashion with which he or she sees fit, so long as the form and fashion do not implicate impermissible discrimination. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). Plaintiff does not allege that Christie made any discriminatory remarks or allusions during the interview. Plaintiff has failed to produce evidence that Defendant's reliance on Plaintiff's interview performance was pretextual.

> ### 4. Education and Background

Plaintiff alleges that a jury could reasonably infer that Defendant's reliance on Brewer's educational attainment was pretextual in light of Plaintiff's extensive experience. Plaintiff alleges that no reasonable hiring official could find Brewer more qualified than Plaintiff. Plaintiff

misconstrues the evidence before this Court. Christie does not assert that Brewer's experience is more extensive than Plaintiff. Rather, Christie notes that Brewer far exceeded the minimum requirements for the position, given his experience and educational attainments, and further noted, by comparison, Plaintiff's high school diploma. The City never represented that it would hire the most experienced candidate without consideration of other factors. Rather, education and experience were only two of a number of factors considered by Christie. Plaintiff has not introduced any evidence, beyond Plaintiff's own opinion, that Brewer was not qualified for the position. This Court has consistently held that it will not second-guess the business acuity underlying management's personnel decisions. *See Smith*, 220 F.3d at 763.

5.      *The Entirety of the Circumstances*

Plaintiff argues that the sum of the circumstances give rise to an inference that Defendant's hiring rationale is pretextual. Plaintiff relies heavily on the fact that despite being qualified at the time of her interview, after the ascendancy of Christie, a male, into the hiring position, the minimum qualifications underwent a modification which permitted Brewer, also a male, to qualify for the position when he was previously not deemed qualified. Plaintiff argues that the sequence of events raises a genuine issue of material fact about whether this modification was intended to discriminate against Plaintiff because of her gender. Plaintiff implies that had Carolyn Nellon remained Director of Human Resources, Plaintiff would have been hired and no modification to the qualifications would have been made.

Plaintiff makes a myriad of arguments about the timeline of the qualifications modification, the strongest of which lies with the false assertion in the Civil Service Commission staff

recommendation memorandum that the national recruitment effort had "failed to yield any qualified candidates" for the position. While the Civil Service Commission Executive Director explains that this statement was a result of a miscommunication between departments, the inconsistency is real evidence going to the truth behind the City's rationale for the qualifications modification. None of Plaintiff's other issues with the timeline, however, support the contention that the modification was part of a plan to discriminate. The fact that the Health Department was concerned about the removal of the certification requirement does not undermine the Department's asserted rationale for the modification (to attract a broader array of viable candidates). Neither does Plaintiff present any evidence to counter Defendant's rationale for the removal of the position discussion at the July 2000 Civil Service Commission meeting (that the matter had been settled). Finally, Plaintiff points to the original modification to the position which would have removed Plaintiff's eligibility for the position. Plaintiff presents no evidence, however, that Defendant's explanation for this modification — its misunderstanding that the CSP and CIH certifications required a bachelor's *ab initio* — was false. In any event, Defendant revised its modification to the position to include applicants in Plaintiff's position before reposting the opening.

6.      *Summary of Plaintiff's Evidence of Pretext*

Based on the foregoing analysis, this Court understands Plaintiff to have produced two pieces of evidence in support of pretext, 1) the old letterhead going to the authenticity of the selection committee recommendation memorandum, and 2) the false assertion in the Civil Service Commission memorandum that no qualified candidates had been found for the position. Neither piece of evidence is dispositive and both are countered by Defendant in the form of deposition

17

testimony and affidavits.

The old letterhead is insufficient to create a genuine issue of material fact as to the memorandum's authenticity. Christie gave a statement under oath that the memorandum is a true and correct copy of what he received on that date. The memorandum is initialed and is consistent with deposition testimony of Vance and the affidavit of Christie. The memorandum was kept in the ordinary course of business. The use of 9-month old letterhead is insufficient to override these indicia of reliability.

The incorrect assertion in the Civil Service Commission memorandum is a closer issue. The inconsistency between the statement therein and the undisputed concession that Plaintiff was qualified for the Safety Manager position is some evidence going to Plaintiff's claim, despite Defendant's explanation for the statement. In this Court's opinion, however, this single inconsistency amounts only to a scintilla of evidence when viewed in the context of the evidentiary record as a whole. This evidence is not sufficient such that a "jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083.

Moreover, Plaintiff has failed to make a showing that Defendant's true motivation was discriminatory. None of Plaintiff's evidence points to gender discrimination. Plaintiff has alleged no statements or references by Defendant management or employees which go to gender discrimination or even animus. Plaintiff relies exclusively on the fact that a white male ultimately received the promotion. Yet another white male, Keith Nichols, was affected in the same way as Plaintiff throughout the hiring process. In fact, Keith Nichols was the successful candidate's direct supervisor prior to the candidate's promotion. Plaintiff points to the entirety of the circumstances

18

surrounding the hiring process, but this Court has held that temporal proximity, standing alone, is "insufficient in and of itself to establish that the employer's nondiscriminatory reason" was, in fact, pretextual. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F3d 309, 317 (6th Cir. 2001).

## CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the district court's grant of summary judgment for Defendant.