NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0481n.06

No. 22-3385

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 29, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MARK SNYDER, | ) | |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| U.S. BANK NATIONAL ASSOCIATION, | ) ) | |
| Defendant-Appellee. | ) ) ) | |

Before: SUTTON, Chief Judge; GRIFFIN and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant U.S. Bank terminated plaintiff Mark Snyder's employment following complaints about his work behavior. Yet Snyder contends the dismissal was impermissible as it interfered with, and was in retaliation for, approved leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, that occurred around the same time. On appeal, he contends that the district court erred in granting summary judgment in favor of U.S. Bank. We disagree and affirm.

I.

Snyder began working for U.S. Bank in March 2002 as a financial analyst. At the time of the events pertinent to this case, he had been promoted to a financial director position, in which he managed a joint venture between U.S. Bank and Kroger, a larger grocer.

Snyder's unfortunate "personal adversity" issues began in 2017. He was arrested in February 2017 after an incident with an ex-girlfriend involving a gun; he eventually pleaded guilty to attempted confinement. He did not tell U.S. Bank, as he did not feel "obligated" to do so under company policy. When he missed work obligations due to his probation, he told U.S. Bank that it was for a "personal situation." Snyder began using cocaine later that year and, in October 2017, he was arrested and charged with possession of drugs and operating a vehicle under the influence. Shortly thereafter, he requested, and U.S. Bank granted, FMLA leave due to a "health condition." Snyder later suffered a stroke on October 23, 2017.

Snyder returned to work in January 2018. On his first day back, he received his 2017 performance review, which was altogether positive. However, Snyder admitted to having residual physical and behavioral conditions from the stroke, such as depression, agitation, and anxiety. Complaints about Snyder's behavior soon emerged. One of Snyder's employees, Brian Henson, reported to Snyder's supervisor, Johnnie Carroll, that he felt unsafe around Snyder. Henson also told Carroll about Snyder's gun charges from 2017; Snyder was combative and confrontational during the subsequent investigation but was still allowed to return to work. Sometime thereafter, Snyder asked to work indefinitely from home, but Carroll did not allow him to do so because of his behavior issues. Other unsolicited complaints about Snyder followed from both U.S. Bank and Kroger employees. These issues led to an official warning from U.S. Bank in May 2018, which detailed, among other things, Snyder's behavioral issues at work and failure to notify U.S. Bank of his real reasons for missing work. It explained that failure to meet the outlined work expectations could result in other disciplinary actions, including termination of employment.

On June 4, 2018, the situation between Carroll and Snyder boiled over. Without being asked to do so, Snyder's assistant, Marcia Kleinhenz, had recorded Snyder's time at work, and she

passed those records to Carroll. Carroll sent these notes to Snyder, asking for his comment. Snyder confronted Kleinhenz in some fashion (the parties dispute the exact events); regardless, Carroll afterward sent an e-mail to human resources, explaining that Snyder's behavior "is consistent with his issues of attempting to intimidate people" and "I no longer think [Snyder's] situation is redeemable and feel I need to act." He asked for "guidance on next steps[.]" Carroll later stated that he made the decision to terminate Snyder's employment that evening.

That evening, Snyder suffered a nervous breakdown at a casino and was hospitalized. The following day, he (or a doctor acting on his behalf) requested FMLA leave. That leave was granted. However, Carroll and others from human resources contacted Snyder on June 22, 2018, to inform him that U.S. Bank was terminating his employment. A letter was sent on June 27, informing Carroll that his termination date would be finalized following the end of Snyder's FMLA leave. That termination became effective on December 28, 2018, and it was ratified by U.S. Bank's Board of Directors within a month. Snyder has not found new work since then as his doctor has not determined he's ready to return to work.

Snyder filed suit in Ohio state court in April 2020, alleging retaliation for and interference with FMLA leave, among other state law claims. U.S. Bank removed the case, citing the federal FMLA questions. The district court ultimately granted summary judgment in favor of U.S. Bank in March 2022 on the FMLA claims and remanded the state law claims back to Ohio state court. Snyder timely appealed.

II.

A.

We review de novo the grant of summary judgment. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 281 (6th Cir. 2012). Summary judgment is appropriate "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts and resulting inferences "in the light most favorable to the nonmoving party." *Seeger*, 681 F.3d at 281 (citation omitted). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (internal quotation marks omitted).

B.

Snyder contends that the district court erred in granting summary judgment to U.S. Bank on both the FMLA interference and retaliation claims. Under the FMLA, an employee may take up to "12 workweeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). When that leave is over, that employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A)–(B). But the FMLA does not entitle an employee to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). An employer may also not "discharge or in any other manner discriminate," i.e., retaliate, "against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2).

Our court applies the *McDonnell Douglass* burden-shifting framework to both FMLA interference and retaliation claims. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 762–63 (6th Cir. 2012). *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under that framework, the plaintiff first has the burden to show a "prima facie case of discrimination." *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If that is done, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the challenged conduct. *Id.* If the defendant does so, the plaintiff then has the burden to demonstrate that the reason is pretext. *Id.*

C.

We begin with Snyder's interference claim. To present a prima facie case of interference, Snyder must show that "(1) [he] was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) [he] was entitled to leave under the FMLA, (4) [he] gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which [he] was entitled." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The employer's intent is not a relevant part of this inquiry; however, the employer's action "does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* at 507–08.

The parties' dispute centers around the fifth prong: that Snyder was denied FMLA benefits to which he was entitled. As for the first step, Snyder argues that there is a genuine issue of material fact as to when his employment was terminated—though the process could have started on June 4 before he took FMLA leave, the evidence suggests that U.S. Bank did not actually terminate him until after he took leave. Because Snyder is generally entitled to reinstatement from FMLA leave, 29 U.S.C. § 2614(a)(1)(A), he has established a prima facie case of FMLA

interference.[1]    Similarly, U.S. Bank has carried its burden to present a legitimate, non-discriminatory reason for his termination.  Carroll received multiple complaints about Snyder's behavior, U.S. Bank had learned about Snyder's arrests, and Snyder had confronted Kleinhenz (in some manner) about her decision to track his time in the office.  U.S. Bank cites these as the real reasons for Snyder's departure, thereby satisfying the second step.

The crux of the debate is the third *McDonnell Douglas* prong.  The burden shifts back to Snyder to demonstrate that there are genuine issues of material fact regarding whether U.S. Bank's reasons were pretextual, but this is where he falls short.  Snyder argues that his performance reviews had always been good before the stroke and that, because he was terminated after he took his second FMLA leave, there's a question of fact as to whether the leave was the tipping point for his termination.  While we agree that the evidence suggests that Snyder had been a good employee before his stroke and that he was officially terminated in December 2018 after he took his second FMLA leave, this evidence alone does *not* create a dispute of material fact that the *FMLA leave itself* was the trigger for his departure.  *Cf. Seeger*, 681 F.3d at 281.  Rather, the undisputed evidence shows that the June 4 confrontation between Kleinhenz and Snyder was the proverbial point of no return.  It was at that point that Carroll, before learning of Snyder's nervous breakdown, decided to fire Snyder, communicating to human resources that Snyder's behavior was "consistent with his issues of attempting to intimidate people," that his situation was not "redeemable," that Carroll "need[ed] to act," and that he wanted "guidance on next steps."  Snyder argues that this was simply a request for guidance, not firing, and posits instead that the FMLA leave, which began the next day, was the real tipping point.  But Snyder has no further evidence to support that point,

---

[1] Notably, Snyder does not challenge that he was denied FMLA *leave* to which he was entitled; his argument is only that he was denied *reinstatement* to his position under § 2614(a)(1)(A).

rendering his theory pure speculation. *See K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) ("[A] party may not avoid summary judgment by resorting to speculation, conjecture, or fantasy." (internal quotation marks and citation omitted)). His conclusion is not a reasonable inference to be drawn from the context in which this e-mail was sent as the evidence shows that Snyder was no longer going to have a job before he took his FMLA leave. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 245 (6th Cir. 2004) ("[A]n employer need not restore an employee who would have lost his job or been laid off even if he had not taken FMLA leave."). In that absence, Snyder's argument thus relies solely on the timing of his discharge. Timing, in conjunction with other evidence, can establish pretext, *see Arban v. West Publ'g Corp.*, 345 F.3d 390, 402–03 (6th Cir. 2003), but "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317. Because Snyder fails to present evidence showing a genuine issue of *material* fact as to whether U.S. Bank's reason for termination was pretextual, *Seeger*, 681 F.3d at 281, we conclude that the district court properly granted summary judgment in favor of U.S. Bank on the interference claim.[2]

D.

We turn next to Snyder's retaliation claim. To present a prima facie case of retaliation (or discrimination), Snyder must show that "(1) [he] availed [himself] of a protected right under the FMLA by notifying [U.S. Bank] of [his] intent to take leave, (2) [he] suffered an adverse employment action, and (3) that there was a causal connection between the exercise of [his] rights

---

[2] With this conclusion, we need not address U.S. Bank's unpreserved but alternative argument for affirmance that no interference occurred because Snyder was unable to return to work at the end of his 12-week leave period. *See Edgar*, 443 F.3d at 506–07 ("[A]n employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12–week period of statutory leave.").

under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508. Unlike the interference theory, the employer's motive is relevant—"retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." *Seeger*, 681 F.3d at 282 (quoting *Edgar*, 443 F.3d at 508). Thus, the central issue is whether the adverse action occurred because of a "prohibited reason" or, instead "for a legitimate nondiscriminatory reason." *Id*.

Snyder posits that he has met his burden of proof because there is a "low threshold of proof necessary to establish a prima facie case of retaliatory discharge," *id.* at 283, and that, in the context of FMLA retaliation, "close proximity alone can be sufficient to establish a prima facie case," Appellant Brief, p. 21 (citing *Santoli v. Vill. of Walton Hills*, No. 1:12CV1022, 2015 WL 1011384, at *6 (N.D. Ohio Mar. 3, 2015)). However, as in the interference context, while temporal proximity "*may* constitute evidence of a causal connection," *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (emphasis added; citation omitted), "the law in this circuit is clear that temporal proximity cannot be the *sole* basis for finding pretext," *Seeger*, 681 F.3d at 285 (emphasis added). In other words, Snyder must still present evidence in addition to his temporal proximity evidence to pass summary judgment.

He cannot do so. As with his interference theory, Snyder notes evidence that he had been a good employee before he took FMLA leave for his stroke and theorizes that he was pushed out of the company after he took leave. Even assuming *arguendo* that this passes the prima facie stage, it does not establish a genuine issue of material fact regarding whether U.S. Bank's proffered reason for terminating Snyder's employment (complaints about his behavioral issues) was pretextual. Carroll decided to terminate Snyder on June 4, and the e-mail sent that day set Snyder's termination in motion. Snyder cites no evidence supporting his theory that it was the FMLA leave,

*not* the numerous complaints into his behavior, that was the reason for his termination. *Cf. K.V.G. Props.*, 900 F.3d at 823. Thus, the only evidence he has supporting his theory is timing, which by itself is insufficient. *See Seeger*, 681 F.3d at 285. Accordingly, the district court did not err in granting summary judgment in favor of U.S. Bank on the retaliation claim.

III.

For the foregoing reasons, we affirm the judgment of the district court.