| | |
|---|---|
| GERALD L. GETER | Case No. 2016-00642JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | |
| | DECISION |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

**{¶1}** On July 19, 2018, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). With leave of court, plaintiff filed a response in opposition on August 16, 2018. On August 23, 2018, defendant filed a motion for leave to file a reply, which was filed on August 30, 2018. Upon review, defendant's motion for leave to file a reply is GRANTED. The motion for summary judgment is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

**{¶2}** Civ.R. 56(C) states, in part, as follows:

**{¶3}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317 (1977).

{¶4} In 1995, plaintiff began his employment as a Corrections Officer (CO) for defendant at the Ohio Reformatory for Women (ORW).  Plaintiff was a member of a collective bargaining unit.  Defendant has two disciplinary tracks:  performance and attendance.  On December 11, 2014, plaintiff entered into a two-year Last Chance Agreement (LCA) as a result of multiple attendance policy violations, which took place between 2010 and 2014.  The LCA stated that plaintiff would be subject to removal for "any and all future violations of the Standards of Employee Code of Conduct Attendance-Based Standards Track."  (Exhibit 5 to plaintiff's December 19, 2016 deposition.)

{¶5} Plaintiff suffers from diabetes, bi-polar disorder, insomnia, and high blood pressure.  Plaintiff takes medication for his conditions, one of which is Seroquel, a sleep aid.  On October 23, 2015, plaintiff worked first shift as scheduled and completed his shift at approximately 2:30 p.m.  Later that day, plaintiff was called for a voluntary overtime shift.  After first shift, plaintiff had taken a low dose of Seroquel in an attempt to get some sleep.  According to plaintiff, if he had refused the overtime shift, he would have violated his LCA.  Plaintiff reported to work for third shift and was assigned to perimeter patrol, during which time his duties included driving a vehicle around the perimeter of ORW to look for any suspicious activity.  Two COs are assigned to perimeter patrol during a shift.  Plaintiff was issued a handgun which was secured in a holster on his person, and a shotgun secured in the trunk of his vehicle.  During third shift, the other CO who was also assigned to perimeter patrol reported to the shift office that she had not seen plaintiff's vehicle making security rounds for twenty minutes.  After searching for his vehicle, Lieutenants David Rispress and Laura Perna found plaintiff's vehicle parked on a gravel road with the lights off and the engine idling.  When they approached his vehicle, they found plaintiff asleep.  After observing plaintiff for approximately five minutes, Lt. Perna knocked on the car window and woke him up.  Plaintiff was removed from his post and was told to report to the Captain's office.

Plaintiff was then told to visit the infirmary for a medical examination. Defendant asserts that plaintiff was ordered to report to a different post within the building for the remainder of his shift. Plaintiff asserts that he was given the choice of either reporting to the other post or going home. After visiting the infirmary, plaintiff left the institution.

{¶6} Plaintiff was issued two notices of termination on two separate bases: (1) sleeping in a perimeter vehicle while on duty, a performance violation, and (2) leaving the institution without permission, an attendance violation and a violation of his LCA. After an investigation and a hearing, plaintiff's employment was terminated on January 19, 2016.

{¶7} Plaintiff asserts that once he began taking intermittent Family and Medical Leave Act (FMLA) leave for his disabilities, he was targeted for removal and harassed. For example, plaintiff asserts that Roger Keller, a human resources employee, revoked his FMLA leave after it had been granted for a hospitalization that occurred in August 2015. In addition, plaintiff asserts that Keller called him a "lazy piece of shit" and a "motherfucker" when he provided him with FMLA paperwork, and that Keller kept a "hit list" of employees who were on FMLA leave in the scheduling office. Plaintiff argues that the reasons given for his termination were a pretext for disability discrimination because he was not sleeping, but, rather, he "passed out" as a result of a diabetic episode and taking Seroquel to treat his bi-polar disorder. Defendant asserts that it is entitled to summary judgment on all of plaintiff's claims.

**Disability Discrimination**

{¶8} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of

1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers* & *Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins.* Co., 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.,* 75 Ohio St.3d 578, 583 (1996). In the absence of the direct method of proof of discrimination, a plaintiff may indirectly demonstrate discriminatory intent using the analysis provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

{¶9} To establish a prima facie case of discriminatory discharge, a plaintiff must show that: (1) he is disabled, (2) he was otherwise qualified for the position, with or without reasonable accommodation, (3) he suffered an adverse action, (4) the employer knew or had reason to know of his disability, and (5) he was replaced or the job remained open." *Hartman v. Ohio DOT,* 10th Dist. Franklin No. 16AP-222, 2016-Ohio-5208, ¶ 18, citing *Rosebrough v. Buckeye Valley High School,* 690 F.3d 427, 431 (6th Cir.2012). As stated in *Hartman, supra,* the elements of a prima facie case can vary based on the circumstances of the case. *See Demyanovich v. Cadon Plating* & *Coatings, L.L.C.,* 747 F.3d 419, 433 (6th Cir.2014) (stating the elements as "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability.")

{¶10} Defendant concedes for purposes of argument only, that plaintiff has stated a prima facie case of disability discrimination. "If the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to present evidence of 'a legitimate, nondiscriminatory reason' for the employer's rejection of the employee." *Williams v. City of Akron,* 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 12. Defendant has produced evidence to show that plaintiff had been issued an LCA for attendance issues

at the time of his termination, and that one reason he was terminated was for leaving the institution without permission after he was examined at the infirmary. Defendant has also provided evidence to show that plaintiff was found sleeping in his perimeter vehicle. Part of the investigation of that incident included interviews, witness statements, and a hearing. Thus, even construing the evidence most strongly in plaintiff's favor, the court finds that defendant has met its burden of production that it had legitimate, nondiscriminatory reasons to terminate plaintiff's employment.

{¶11} "If the employer meets its burden of production, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Id.* at ¶ 14, quoting *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). "To establish pretext, a plaintiff must demonstrate that the proffered reason (1) has no basis in fact, (2) did not actually motivate the employer's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir.2000). Regardless of which option is chosen, the plaintiff must produce sufficient evidence from which the trier of fact could reasonably reject the employer's explanation and infer that the employer intentionally discriminated against him. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir.2003). A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)." *Knepper v. Ohio State Univ.,* 10th Dist. Franklin No. 10AP-1155, 2011-Ohio-6054, ¶ 12. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine, supra,* at 253.

{¶12} Regarding whether the proffered reason for plaintiff's termination had no basis in fact, plaintiff asserts that he was given the option to either return to a different post or go home after his medical evaluation, thus, he was not absent without leave.

Plaintiff also argues that he "passed out" because of either his disabilities or the medication he takes, so he was not sleeping. Essentially, plaintiff disputes the facts as found during defendant's investigation. However, plaintiff must "provide more than a simple denial of the conduct giving rise to the discharge." *Wigglesworth v. Mettler Toledo Int'l. Inc.*, 10th Dist. Franklin No. 09AP-411, 2010-Ohio-1019, ¶ 19. In addition, a "bare assertion" that defendant's reasons have no basis in fact "fails to create a genuine issue of material fact" for summary judgment purposes. *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. Franklin No. 11AP-1068, 2012-Ohio-5036, ¶ 36. Accordingly, plaintiff has not presented evidence from which the court can infer that the proffered reason for his termination had no basis in fact.

{¶13} Plaintiff asserts that defendant's stated reasons for terminating his employment were insufficient because plaintiff asserts that he had permission to leave the institution after he went to the infirmary, and that no one gets fired for sleeping on the job. To support his arguments, plaintiff asserts that Lt. Rispress lied when he stated that plaintiff did not have permission to go home. Plaintiff also mentions names of other employees who have fallen asleep on the job but have not been disciplined. However, the disciplinary grid for performance track violations specifically states that the first offense of sleeping on duty may result in either a two-day fine, suspension or working suspension, or a removal. (*See* Exhibit 1 to plaintiff's December 19, 2016 deposition, Bates Nos. ORW 002417, ORW 002414.) Therefore, even construing the evidence most strongly in favor of plaintiff, and even if Lt. Rispress was mistaken when he stated that plaintiff had left the institution without permission, the only reasonable conclusion is that plaintiff's conduct, by falling asleep in the perimeter vehicle, warranted his termination. Moreover, "[s]o long as the employee's misconduct is related to the performance of [his] job, an employer may discipline or terminate the employee even if [his] misconduct was caused by [his] disability." *Sper v. Judson Care Ctr. Inc.*, 29 F.Supp.3d 1102, 1110 (S.D. Ohio 2014). Accordingly, the court finds that plaintiff has

failed to produce sufficient evidence from which the court can reasonably reject the employer's explanation and infer that the employer intentionally discriminated against plaintiff.

{¶14} Lastly, plaintiff asserts that the proffered reasons for his termination did not actually motivate defendant's conduct, because Keller had a discriminatory animus toward him for using FMLA leave for his disabilities. Plaintiff points to Keller's remarks of calling him a "motherfucker" and a "lazy piece of shit." Despite these alleged comments, Keller testified that he was not a decision-maker in plaintiff's termination. In addition, defendant filed the affidavit of Ronette Burkes, who avers, in part:

{¶15} "2. I am employed by Defendant as the Warden at the Ohio Reformatory for Women (ORW). I have held this position since November 2013. In this role, I am the appointing authority and responsible for making all employee hiring and discipline decisions, including termination.

{¶16} "3. In December 2015, I issued two notices of termination to Gerald Geter, a correctional officer at the time. He had engaged in two separate and distinct rule violations and termination was warranted under either one independently. One basis for termination was his violation Employee Conduct Rule 10: Sleeping on duty. Two supervisors observed him sleeping in the perimeter vehicle. This is a performance track infraction and termination was warranted because of the severity of the situation. A separate and independent basis for termination was violation of Rule 3G: Leaving the work area/post/facility without the permission of a supervisor. He was on a last chance agreement and this attendance track infraction violated that agreement. Attached hereto as Exhibit A are true and accurate copies of the Notices that were issued to Mr. Geter.

{¶17} "4. These two incidents were investigated by Captain Josette Okereke and she recommended further action. *Roger Keller was not involved in the investigation and I did not consult or speak with him about this matter when making my decision to issue*

*the two notices of termination. My decision was not based on any disability that Mr. Geter may have, or his need to take FMLA leave.*" (Emphasis added.)

**{¶18}** Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that defendant's stated reasons for terminating plaintiff were not pretextual. Accordingly, defendant is entitled to summary judgment on plaintiff's claim of disability discrimination.

**FMLA**

**{¶19}** The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. 2615(a). Two distinct theories of recovery arise under these statutes: the "interference" theory, and the "retaliation" theory. *See Arban v. West Publishing Corp.*, 345 F.3d 390, 400-401 (6th Cir. 2003.)

**{¶20}** For an interference claim, a plaintiff must establish that: "(1) he was an eligible employee, (2) defendant was a covered employer, (3) he was entitled to leave under the FMLA, (4) he gave defendant notice of his intent to take leave, and (5) the defendant denied him FMLA benefits or interfered with FMLA rights to which he was entitled." *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 482 (6th Cir. 2010). The employer's intent is not a relevant part of the interference inquiry. *Arban,* at 401. However, "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Prods.,* 443 F.3d 501, 508 (6th Cir.2006).

**{¶21}** Plaintiff asserts that Keller "revoked" his request for FMLA leave after it had been approved for a hospitalization that occurred in August 2015. Exhibit F to plaintiff's May 21, 2018 deposition is a notice, dated September 15, 2015, from Keller which sought "sufficient certification" to support his request for FMLA leave beginning on August 27, 2015. Once that paperwork was received, plaintiff's FMLA leave was

granted. (Defendant's Ex. I.) Defendant points to its Exhibits G, H, I, and J to show that every time that plaintiff requested FMLA leave and filled out the certification forms correctly, he was granted leave. Construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that defendant did not deny plaintiff his FMLA benefits or interfere with his FMLA rights. Accordingly, plaintiff's FMLA interference claim fails as a matter of law.

{¶22} Under the retaliation theory "the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir.1998.) The court applies the burden-shifting test articulated in *McDonnell Douglas*, *supra*, to retaliation claims under the FMLA. *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315-16 (6th Cir.2001.) Plaintiff can establish a prima facie case of FMLA retaliation by showing that (1) he availed himself of a protected right under the FMLA by notifying defendant of his intent to take leave, (2) he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. *Id.,* at 314. If plaintiff satisfies these three requirements, the burden shifts to defendant to proffer a legitimate, nondiscriminatory rationale for discharging the employee. *Id.* at 315.

{¶23} Plaintiff asserts that Keller had a discriminatory animus toward him because he availed himself of FMLA leave. Specifically, plaintiff points to his own testimony and the testimony of Shavelle Little to show that Keller called plaintiff a "lazy piece of shit" and a "motherfucker," when Keller "threw" a packet of papers at him regarding his FMLA certification. Even assuming these facts as true, plaintiff has not provided evidence to show a causal connection between the exercise of his rights under the FMLA and his termination. For the same reasons that plaintiff's disability discrimination claim fails, his claim of FMLA retaliation fails, because Keller was not a

decision-maker in plaintiff's termination. Thus, plaintiff has failed to present evidence from which the court can infer a causal connection between the exercise of his FMLA rights and his termination.

{¶24} Lastly, although plaintiff did not specifically argue that Keller's comments were direct evidence of discrimination, construing the evidence most strongly in plaintiff's favor, the only reasonable conclusion is that Keller's comments are not direct evidence of discrimination. "Direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Ceglia v. Youngstown State Univ.*, 10th Dist. Franklin No. 14AP-864, 2015-Ohio-2125, ¶ 16. "[D]irect evidence of discrimination does not require a factfinder to draw inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir.2003). The only reasonable conclusion is calling plaintiff a "motherfucker" does not require the conclusion that he was terminated because of his disabilities or because he took FMLA leave. Moreover, Keller's comment that plaintiff was a "lazy piece of shit" does not require the conclusion that he was terminated for his disabilities or for taking FMLA leave. Finally, plaintiff has not presented evidence to rebut defendant's affidavit from Burkes showing that Keller was not a decision-maker in plaintiff's termination. Accordingly, summary judgment shall be rendered in favor of defendant on all of plaintiff's claims.

PATRICK M. MCGRATH
Judge

| | |
|---|---|
| GERALD L. GETER | Case No. 2016-00642JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Holly True Shaver |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶25} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.


PATRICK M. MCGRATH
Judge

**Filed September 26, 2018**
**Sent to S.C. Reporter 10/12/18**